**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-6495**

---

WEBSTER DOUGLAS WILLIAMS, III

              Plaintiff – Appellant,

v.

MICHAEL CARVAJAL

              Defendant – Appellee.

------------------------------

ARC OF THE UNITED STATES; MENTAL HEALTH AMERICA; NATIONAL
DISABILITY RIGHTS NETWORK

              Amici Supporting Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina at
Raleigh.  Louise W. Flanagan, District Judge (5:20−ct−03189−FL)

---

Argued:  January 24, 2023                              Decided:  March 29, 2023

---

Before WILKINSON and DIAZ, Circuit Judges, and Max O. COGBURN, Jr., United
States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Diaz
and Judge Cogburn joined.

---

**ARGUED:** Jennifer A. Wedekind, AMERICAN CIVIL LIBERTIES UNION, Washington, D.C., for Appellant. Holly Paxson Pratesi, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Daniel K. Siegel, Michele Delgado, ACLU OF NORTH CAROLINA LEGAL FOUNDATION, Raleigh, North Carolina; Kaitlin Banner, Jacqueline Kutnik-Bauder, Ashika Verriest, Margaret Hart, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS, Washington, D.C., for Appellant. Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Amici Curiae.

---

WILKINSON, Circuit Judge:

Webster Williams, a federal inmate, sued Federal Bureau of Prisons (BOP) staff alleging, *inter alia*, discrimination and retaliation under the Rehabilitation Act. The district court dismissed the action for failure to exhaust available administrative remedies. According to the court, the Prison Litigation Reform Act required Williams to exhaust both the BOP's Administrative Remedy Program and an additional remedy, particular to prison discrimination claims, administered by the Department of Justice's Director of Equal Employment Opportunity. Williams appeals, arguing that he was only required to exhaust the BOP's Administrative Remedy Program under the Prison Litigation Reform Act. Williams asserts in the alternative that the Department of Justice remedies were not "available" to him. We disagree with both contentions and thus affirm the district court's dismissal without prejudice for failure to exhaust.

## I.

## A.

On February 28, 2019, Webster Williams was walking to his work assignment at the Butner Federal Correctional Complex in North Carolina when he developed a strong urge to urinate. Williams suffers from several medical conditions, including kidney disease, and takes a diuretic that causes excessive urination. As Williams headed to the restroom, an alarm was triggered elsewhere in the prison. BOP Unit Manager Willis responded by heading to the restroom entrance and telling inmates to return to their cells. Williams proceeded past Willis without addressing him and went into a stall.

3

While Williams was in the restroom stall, an unknown individual began rapping on the stall door and asked Williams to return to his cell. When Williams exited the restroom, Willis confronted him, asking why Williams disobeyed orders. Williams responded that he took "water pills, and [he] had to use the restroom." J.A. 17. He then proceeded back to his cell.

BOP officials issued a disciplinary action report charging Williams with refusal to obey Willis's command. Williams requested a hearing before a Uniform Disciplinary Committee (UDC). Williams explained to the UDC that he disobeyed the order due to his overwhelming need to urinate arising from his medical conditions and argued that Willis "intentionally omitted" that fact from his report. J.A. 19. Williams also presented the officers conducting the UDC hearing with copies of the Americans with Disabilities Act, which they declined to review. The officers found Williams guilty of refusing to obey an order, allegedly responding "[w]ho do you think we're going to believe, an inmate or one of our own?" *Id.* Williams was sanctioned with the loss of telephone privileges for one month. He is concerned that the disciplinary infraction will affect his chances for early home confinement when he becomes eligible.

B.

Williams filed a grievance contesting the UDC decision, following the guidelines set forth in BOP's Administrative Remedy Program (ARP). 28 C.F.R. §§ 542.10–542.19. The ARP sets forth the BOP's grievance process. This internal appeals process "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own

4

confinement." *Id.* § 542.10(a). The ARP is fully completed when an inmate appeals to and receives a response from BOP's General Counsel. *Id.* § 542.15(a).

After Williams completed the final step of this administrative process, he filed a *pro se* complaint in federal court against various BOP officials. He alleged that the disciplinary charge and subsequent conviction were in violation of the disability protections of the Rehabilitation Act, 29 U.S.C. § 794(a). He also claimed that the UDC procedures violated his procedural due process rights. Williams sought compensatory and punitive damages, as well as injunctive relief directing defendants not to transfer him to another BOP facility, to accommodate his disability, and to expunge his disciplinary conviction.

In a screening order, the district court allowed Williams's discrimination and retaliation claims to proceed under the Rehabilitation Act and dismissed all other claims. The court also dismissed all defendants except Michael Carvajal, the BOP Director, reasoning that the Rehabilitation Act only allowed for suits against prison officials in their official capacities. J.A. 35 (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999)). According to the court, only Director Carvajal was properly named in his official capacity. The district court also dismissed Williams's claim for damages under the Rehabilitation Act, as "such remedies are barred by sovereign immunity." *Id.* (citing *Lane v. Pena*, 518 U.S. 187, 200 (1996)). Williams moved for reconsideration.

BOP simultaneously moved to dismiss Williams's complaint for failure to exhaust under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The district court granted BOP's motion, construed as a motion for summary judgment, and denied Williams's motion for reconsideration. The court noted that the PLRA requires an inmate

to exhaust all "available" remedies. *Williams v. Carvajal*, No. 5:20-CT-3189-FL, 2022 WL 945587, at *4 (E.D.N.C. Mar. 29, 2022). Though Williams properly exhausted the ARP, he did not exhaust the "additional procedure for exhaustion of administrative remedies when an inmate asserts discrimination or retaliation based on account of a disability." *Id.* (citing 28 C.F.R. § 39.170). This additional process, administered by the Department of Justice's Director for Equal Employment Opportunity (EEO), "applies to all allegations of discrimination on the basis of handicap in programs or activities conducted by the agency." 28 C.F.R. § 39.170(a). The EEO process twice refers to complaints filed by BOP inmates in its implementing regulations. *See id.* § 39.170(d)(1), (3).

The district court reasoned that the PLRA's mandatory language required Rehabilitation Act claimants to exhaust both the BOP's ARP and the EEO process. It further held that Williams had "not established that the EEO process is unavailable" under the standards delineated in *Ross v. Blake*, 578 U.S. 632, 642-44 (2016). *Williams*, 2022 WL 945587, at *4. Williams's failure to exhaust the EEO process led the court to dismiss the case, and this appeal timely followed.

Williams appeals, arguing that the PLRA requires only the exhaustion of internal prison grievance procedures like the ARP, and not external grievance procedures like the EEO process. He further contends that even if he did have to exhaust the EEO process, that process was unavailable to him within the meaning of the PLRA. Last, he argues that the district court erred in dismissing all the defendants except for Director Carvajal.

We hold that the PLRA requires Williams to exhaust both the ARP and the EEO process and that the EEO process was "available" to Williams. *See* 42 U.S.C. § 1997e(a).

Since we affirm the dismissal without prejudice of Williams's sole remaining claim under the Rehabilitation Act for failure to exhaust, we need not take up at this juncture the argument that the district court improperly dismissed the other defendants. We shall address the exhaustion issues in turn.

## II.

This court has jurisdiction to review the district court's dismissal without prejudice under *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (en banc). The district court construed Carvajal's motion to dismiss as a motion for summary judgment, which we review *de novo*. *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021). "Summary judgment is appropriate only if no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022) (internal quotations omitted). As the non-moving party, "we view the facts in the light most favorable" to Williams. *Id.*

Williams claims that the PLRA requires exhaustion only of internal prison grievance procedures. He thus contends he complied with the PLRA in exhausting the ARP only and not the additional EEO process. We disagree for several reasons. First, Williams's reading of the PLRA would require us to place our own gloss on the statute, one which is barred by both the plain language of its text and Supreme Court precedent. Second, a dual exhaustion requirement furthers the purposes of the PLRA. Third, to hold in Williams's favor would be to upset established case law and to place a significant burden on district courts in adjudicating these suits.

7

A.

As always, an issue of statutory interpretation begins with the text. *McAdams v. Robinson*, 26 F.4th 149, 156 (4th Cir. 2022). The text of the PLRA's exhaustion requirement reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until *such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). This exhaustion requirement means what it says: "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take special circumstances into account." *Ross*, 578 U.S. at 639.

Over the last twenty years, the Supreme Court has strictly interpreted this exhaustion provision. It applies to all "suits about prison life, whether they involve general circumstances or particular episodes," and whether they fall "under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (internal quotations omitted). Exhaustion, moreover, must be "proper," which means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The PLRA requires a prisoner to exhaust administrative remedies "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001).

8

The Court has also made it clear that it will not read "exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Id.* at 741 n.6. The only exception Congress provided in the text of the PLRA is the mention of "such administrative remedies *as are available*." 42 U.S.C. § 1997e(a) (emphasis added). As such, the Supreme Court held in *Ross v. Blake* that the only exception to the PLRA's exhaustion requirement is when an administrative remedy is not "available." 578 U.S. at 642. "Available," in turn, means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Id.* (internal quotations omitted). An inmate is therefore required to exhaust those "grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotations omitted). Aside from this exception, "the PLRA's text suggests no limits on an inmate's obligation to exhaust[.]" *Id.* at 639.

Despite the clear text, Williams seeks to add his own spin. Williams does not, and cannot, argue that claims brought by inmates under the Rehabilitation Act are exempt from the PLRA's mandatory exhaustion provision. *See* 42 U.S.C. § 1997e(a) (exhaustion requirement applies to an action under 42 U.S.C. § 1983 or "any other Federal law"); *see also O'Guinn v. Lovelock Corr. Center*, 502 F.3d 1056, 1058 (9th Cir. 2007) (holding that the PLRA requires prisoners to exhaust available administrative remedies before bringing claims under the Rehabilitation Act in federal court). According to Williams, however, "[e]xhaustion of *internal* prison grievance procedures is all the PLRA requires." Appellant Opening Br. at 16 (emphasis added). This would mean, he says, that he was only required to exhaust the BOP's Administrative Remedy Program (ARP), not the Department of

9

Justice EEO process specifically implemented to address complaints of discrimination under the Rehabilitation Act.

Williams's argument runs afoul of the PLRA's text. The statute does not say "such *internal* administrative remedies as are available." It says, "such administrative remedies as are available," full stop. *See* 42 U.S.C. § 1997e(a). The statutory text speaks to the availability of certain remedies, not who created them. We thus cannot accept Williams's suggested limitation on the PLRA. It is our role to "enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010); *see also Triton Marine Fuels Ltd., S.A. v. M/V Pac. Chukokta*, 575 F.3d 409, 416 (4th Cir. 2009). The plain language of the PLRA requires exhaustion of all administrative remedies, so long as they are available.

Williams's claim here falls within the scope of two different administrative remedies: the BOP's ARP and the DOJ EEO process. Both systems are set out in detail in their implementing regulations.

To fully exhaust the ARP, prisoners must follow the guidelines set out in 28 C.F.R. part 542. First, they must attempt an informal resolution with prison staff. 28 C.F.R § 542.13(a). Second, they must request and file a formal written Administrative Remedy Request on the appropriate form with certain identifying information. *Id.* § 542.14(a). This step must be completed within 20 days of the incident that gave rise to the grievance, and the facility warden has up to 40 days to respond. *Id.* §§ 542.14(a), 542.18. After receiving the warden's response, an inmate must submit an appeal to the appropriate BOP Regional Director within 20 days. *Id.* § 542.15(a). The Regional Director then has up to 60 days to

respond to the appeal. *Id.* § 542.18. Lastly, the "final administrative appeal" is to BOP's General Counsel, which must be completed within 30 days of the Regional Director's signed response. *Id.* § 542.15(a). The General Counsel then has up to 60 days to respond. *Id.* § 542.18.

For most claims, federal inmates need only follow the rules of the ARP. For Rehabilitation Act claims, however, inmates must also follow the procedures laid out in 28 C.F.R. § 39.170. These compliance procedures apply "to all allegations of discrimination on the basis of a handicap in programs or activities conducted by the" Department of Justice, of which BOP is part. *Id.* § 39.170(a). These procedures expressly apply to inmates and explain when and how to file a complaint. *Id.* § 39.170(d)(1)–(4).

The regulation first requires exhaustion of the BOP's ARP before an inmate can seek relief with the EEO, and a complaint must be filed with the EEO within 180 days of completing the ARP. *Id.* § 39.170(b)(1)(ii), (3). Within 180 days of receipt of a complaint, an official at EEO must complete an investigation into the claims alleged, attempt informal resolution, and if no informal resolution is achieved, issue a letter of findings. *Id.* at § 39.170(g)(1). Either party may appeal those findings to the EEO's Complaint Adjudication Officer within 30 days. *Id.*, § 39.170(i)(1). A party may also request a hearing before an administrative law judge. *Id.* at § 39.170(i),(k). The Complaint Adjudication Officer then has 60 days to resolve the appeal, measured either from receipt of the notice of appeal and investigative record, or if a hearing occurred, after the period for filing exceptions ends. *Id.* at § 39.170(*l*)(1). Once the Complaint Adjudication Officer issues a final agency decision, this administrative process is exhausted.

11

Inmates lodging Rehabilitation Act claims must follow both the ARP and the EEO process. While Williams exhausted the ARP, he failed even to initiate the EEO process. This proves fatal to Williams's argument because the EEO remedies, to the extent that they are "available" to Williams, must have been exhausted pursuant to the plain language of the PLRA. *See Ross*, 578 U.S. at 642. The statute speaks of "available" administrative remedies. It does not seek to subdivide them. Williams's attempt to distinguish between "internal" and "external" remedies thus falters upon first read of the statutory text.

B.

Williams argues that this interpretation undermines the whole purpose of the PLRA. To the contrary, requiring exhaustion of both the BOP's Administrative Remedy Program and the EEO process serves the goals that the PLRA was enacted to achieve. Congress passed the PLRA "to reduce the quantity and improve the quality of prisoner suits." *Nussle*, 534 U.S. at 524. The PLRA's "invigorated" exhaustion requirement is the "centerpiece" of the legislation. *Woodford*, 548 U.S. at 84 (internal quotations omitted). Such "[e]xhaustion of administrative remedies serves two main purposes." *Id.* at 89 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). First, it "protects administrative agency authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* (internal quotations omitted). Second, "exhaustion promotes efficiency." *Id.* Complaints can be resolved satisfactorily at the administrative level, thereby reducing litigation, and litigation that does occur is improved by an already compiled and vetted record. *See Jones*, 549 U.S. at 219.

12

Requiring an inmate alleging a Rehabilitation Act violation to exhaust both the EEO process and the BOP's ARP fully serves these purposes. Such a scheme, as an initial matter, makes sequential sense. It initially gives the BOP the chance to correct its own mistakes through the ARP. It then allows the complaint to proceed to DOJ, the agency charged by the President to coordinate the implementation of the Rehabilitation Act across the federal government. *See* Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980). The EEO process, which is explicitly and specifically tailored to disability discrimination claims, then gets to properly address the alleged violations. *See* 28 C.F.R. § 39.170(a).

Such a dual exhaustion requirement, then, allows BOP to avail itself of the expertise of the DOJ, and DOJ can then apply that expertise to correct BOP mistakes. It would make little sense to disqualify the administrative remedy which brings the greatest expertise and experience to the issue that plaintiff has raised. "The basic purpose of . . . exhaustion doctrine is to allow an administrative agency to perform functions within its special competence— to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972).

Despite this, Williams argues that "'[f]iling a complaint with the DOJ, an external federal agency, does not allow correctional officers to respond directly to inmates' grievances nor does it allow them to remedy the issues raised in the grievance.'" Appellant Opening Br. at 21 (quoting *Veloz v. New York*, 339 F. Supp. 2d 505, 519 (S.D.N.Y. 2004)). Not so. The EEO procedures give BOP officials the opportunity to address claims directly to ensure that they are complying with the Rehabilitation Act. As we have noted, the EEO process requires as its first step investigation into the actions complained of and attempted

13

informal resolution of the claim. *See* 28 C.F.R. § 39.170(g)(1). The EEO official can also "require agency employees to cooperate in the investigation and attempted resolution of complaints." *Id.* § 39.170(g)(2). With DOJ guidance, the EEO process provides additional time and resources for BOP officials to correct any mistakes within prisons themselves.

Finally, a dual exhaustion requirement also promotes efficiency. Far from being "redundant bureaucratic entanglement" which "only acts to postpone and delay," as Williams argues, *see* Appellant Opening Br. at 21, the EEO process can resolve claims "much more quickly and economically . . . than in litigation in federal court," *Woodford*, 548 U.S. at 89. Whereas the EEO process takes about a year to complete, the lifespan of the average civil case in federal court is much more variable and usually longer. *Compare* 28 C.F.R. § 39.170, *with* Admin. Office of the U.S. Courts., *Federal Court Management Statistics* (Sept. 30, 2022) (for the 12-month period ending September 30, 2022, civil actions in U.S. district courts took on average 34.4 months from filing to the date trial began).

Rather than delay a remedy for certain complaints, the DOJ is empowered to require immediate change within the BOP. The regulations require prompt action from any entity found to be in violation of the Rehabilitation Act. *See* 28 C.F.R. § 39.170(*l*). DOJ can also "require periodic compliance reports," in which an entity like the BOP must demonstrate active compliance with any decision from the EEO. *Id.* § 39.170(*l*)(2). Had Williams followed the EEO process, the injunctive relief he now seeks might have been resolved without resort to federal litigation. *See Nussle*, 534 U.S. at 525 (exhaustion "obviate[es]

14

the need for litigation" by encouraging "corrective action taken in response to an inmate's grievance").

As a last-ditch effort, Williams argues that a "double-exhaustion requirement would impose different and unequal burdens on plaintiffs with disabilities bringing Rehabilitation Act claims." Appellant Opening Br. at 34. We disagree. Providing an additional administrative remedy in an agency with special expertise in disability discrimination is not discriminatory. Rather, it is intended to "channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Requiring exhaustion of EEO processes gives Williams another shot at obtaining administrative relief before he must resort to often-protracted litigation. Far from discriminating against plaintiffs with disabilities, this ensures that their claims will be heard in a proper forum and that they may receive a proper remedy. Such a system is entirely lawful.

C.

We further note that courts within our circuit that have confronted this issue have concluded that the PLRA requires exhaustion of the BOP's ARP and the EEO process. *See Wise v. C. Maruka*, No. CV 1:20-00056, 2021 WL 1603819, at *11 (S.D.W. Va. Jan. 5, 2021), *report and recommendation adopted sub nom. Wise v. Maruka*, No. CV 1:20-00056, 2021 WL 1146002 (S.D.W. Va. Mar. 25, 2021); *Peppers v. Moubarek*, No. CV PWG-19-2346, 2020 WL 5759763, at *9 (D. Md. Sept. 25, 2020); *Hopper v. Barr*, No. 5:18-CV-01147-MGL-KDW, 2019 WL 3938076, at *6 (D.S.C. July 31, 2019), *report and recommendation adopted*, No. CV 5:18-1147-MGL, 2019 WL 3935181 (D.S.C. Aug. 20,

2019); *Gambino v. Hershberger*, No. CV TDC-17-1701, 2019 WL 1300856, at *10 (D. Md. Mar. 20, 2019); *Zoukis v. Wilson*, No. 1:14-CV-1041-LMB/IDD, 2015 WL 4064682, at *10 (E.D. Va. July 2, 2015).

Many district courts around the country have likewise reached the same conclusion. *See, e.g., Barrett v. Federal Bureau of Prisons*, No. 19-CV-3250, 2022 WL 93504, at *5 (N.D. Ill. Jan. 10, 2022) (collecting cases). The persistence before the district courts of the various issues presented in this case further underscores the importance of a rigorous exhaustion requirement. If we were to relieve prisoners like Williams of pursuing administrative remedies before the DOJ, we would be imposing a large burden on district courts to resolve many insubstantial claims that would not have survived the scrutiny of the EEO. This undermines the very purpose of the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Nussle*, 534 U.S. at 524. We agree with the vast majority of courts that find the PLRA requires exhaustion of both the BOP's ARP and the EEO process for federal inmates alleging violations of the Rehabilitation Act.

III.

As exhaustion of the EEO process is required, Williams argues in the alternative that the EEO process was not "available" to him under the PLRA. 42 U.S.C. § 1997e(a). The Supreme Court held in *Ross v. Blake* that the sole exception to the PLRA's exhaustion requirement is that the remedy must be "available." 578 U.S. at 648. According to Williams, he was never informed about the EEO process, rendering it unavailable to him.

Again we disagree. Although the record indicates that the BOP could have been clearer in its instructions to prisoners alleging Rehabilitation Act claims, we cannot

16

conclude that the EEO process was unavailable under the standards delineated in the *Ross* decision.

## A.

The Supreme Court instructed that "the ordinary meaning of the word available" in the PLRA is "capable of use for the accomplishment of a purpose and that which is accessible or may be obtained." *Ross*, 578 U.S. at 642 (internal quotations omitted). Therefore, "if a prison grievance procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the action complained of,' the exhaustion requirement 'does not come into play.'" *Griffin*, 56 F.4th at 335 (quoting *Ross*, 578 U.S. at 642–43).

Under this standard, the Supreme Court has identified three circumstances where an administrative remedy may be considered unavailable. First, an administrative procedure is unavailable when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Such a scenario involves a situation in which "rules are so confusing that no reasonable prisoner can use them," rendering the remedies "essentially unknowable." *Id.* at 644 (internal quotations and alterations omitted). Third, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Williams cannot contend that the EEO process operates as a simple dead end. Instead, he essentially argues that since he was unaware of the EEO process, it was

unavailable to him. Simple unawareness, however, does not rise to the level of unavailability. An unavailable remedy is one "that was not discovered, and which *could not have been discovered through reasonable effort*, until it was too late for it to be used[.]" *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) (emphasis added). And further, simple unawareness does not show that BOP played "hide-and-seek" with the EEO process so as to thwart Williams's access to it. *Ross*, 578 U.S. at 644 n.3 (internal quotations omitted).

Simply put, the EEO process was "capable of use to obtain some relief for the action complained of," and thus is "available" within the meaning of the PLRA. *Ross*, 578 U.S. at 642 (internal quotations omitted). Indeed, Williams does not argue that other inmates have not used it. On appeal, the government presented evidence of BOP Program Statement 5200.06. *See* Fed. Bureau of Prisons, *Management of Inmates with Disabilities*, Program Statement 5200.06 (Nov. 22, 2019). Although that policy was not promulgated until after Williams appealed to BOP's General Counsel, at which time Williams still could have utilized the EEO process, its substantially similar predecessor policy was in force for all other relevant events. *See* Fed. Bureau of Prisons, *Management of Inmates with Disabilities*, Program Statement 5200.05 (Oct. 27, 2017). Either way, some BOP program statement governed the steps Williams needed to take after he completed the ARP. The Program Statements both have a section entitled "Administrative Remedies," stating that, in addition to the ARP, "inmates alleging violations of the Rehabilitation Act must also use additional procedures required by the [DOJ] in order to exhaust available administrative remedies." *Id.* at 10; Program Statement 5200.06 at 11. The Program Statements also

explicitly directed inmates to the "DOJ procedures . . . found at 28 C.F.R. § 39.170." Program Statement 5200.05 at 10; Program Statement 5200.06 at 11. Finally, the Program Statements were publicly available. *See also Barrett*, 2022 WL 93504, at *9 (finding that Program Statement 5200.06 was available to a BOP inmate through the Electronic Law Library).

The EEO remedy was not only generally available to all inmates. Williams also could have discovered the Program Statements and the EEO process through reasonable effort. Indeed, Williams's *pro se* complaint shows an understanding both of the case law involved in his complaint and his rights under the Rehabilitation Act. He even went so far as to cite in his complaint a magistrate's recommendation on a preliminary injunction motion in a case where the same magistrate judge recommended that a Rehabilitation Act claim should be dismissed for failure to exhaust both the ARP and the EEO process. *Compare* J.A. 9 (citing *Washington v. Fed. Bureau of Prisons*, No. 5:16-CV-03913-BHH-KDW, 2018 WL 6499514 (D.S.C. Aug. 6, 2018)), *with Washington v. Fed. Bureau of Prisons*, No. 5:16-CV-03913-BHH-KDW, 2019 WL 2125246, at *7–8 (D.S.C. Jan. 3, 2019). Moreover, after the district court dismissed all but Williams's Rehabilitation Act claims in a screening order, he filed objections in which he referred to BOP Program Statement 5200.06. *See* Suppl. App'x 2. This was two months before the government's motion to dismiss in which it asserted its exhaustion defense. *See* J.A. 43–44.

In prison litigation as elsewhere, there are all kinds of statutes, regulations, and case law that may be helpful to any given claim. The government cannot be expected to make inmates aware of each and every legal authority that might be of use. *See Lewis v. Casey*,

518 U.S. 343, 355 (1996) (finding that the constitutional right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines"). Such a requirement would come uncomfortably close to requiring the government to assume a quasi-legal role in support of an inmate's claim. Here, BOP issued a separate Program Statement requiring prisoners to exhaust the EEO process. In short, we cannot find that a plainly available administrative procedure was in some way unavailable as the Supreme Court in *Ross* has defined it.

B.

Although we hold the EEO process was "available" to Williams, we observe that it would pain the BOP very little to make clearer to inmates filing Rehabilitation Act claims that they are required to exhaust both the BOP's grievance policies and the EEO process. The administrative exhaustion process, with its various program statements and agency procedures, should, in short, be made clear to those who seek to utilize it. The fact that a process may in a strict sense be "available" does not entirely absolve the BOP of an obligation to inform inmates of what is required of them and where remedies may be found. For example, as the district court observed, "the administrative remedy program does not mention the EEO procedure for disability claims[.]" *Williams*, 2022 WL 945587, at *4. It would be a superior practice going forward to indicate within the ARP the administrative course that the PLRA requires Rehabilitation Act claimants to pursue. Clearer notice to Rehabilitation Act claimants in the future may assist with the PLRA's aim in reducing prison litigation. It will at least spare district courts the need for innumerable dismissals

20

without prejudice for failure to exhaust, and it will spare inmates time wasted on unfruitful lawsuits and appeals.

IV.

The PLRA's exhaustion provision is plain. It requires prisoners to utilize all "available" administrative remedies. For Rehabilitation Act claimants, these remedies include both the BOP's ARP and a separate EEO process administered by the DOJ. Williams failed to exhaust these remedies despite them being "available" to him under the PLRA. Accordingly, we affirm the district court's dismissal of Williams's complaint without prejudice to his ability to exhaust the EEO remedies "available" to him within the meaning of the PLRA.[*] We trust that the administrative process will provide him the chance to fairly present his claims as he seeks to fulfill his statutory responsibilities.

*AFFIRMED*

---

[*] We note that the EEO regulations allow an extension of the time to file a complaint "for good cause shown." 28 C.F.R. § 39.170(d)(3).

21